***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Glenn and the briefs and arguments before the Full Commission. The appealing party has shown good grounds to reconsider the evidence. Upon reconsideration, the Full Commission modifies in part and affirms in part the Opinion and Award of Deputy Commissioner Glenn.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS *Page 2 
1. All the parties are properly before the North Carolina Industrial Commission and the Industrial Commission has jurisdiction of the parties and of the subject matter of this case. All parties are bound by and subject to the North Carolina Workers' Compensation Act. All parties have been correctly designated and there is no question as to the misjoinder or nonjoinder of any party.
2. The employer-employee relationship existed between plaintiff and defendant-employer at all relevant times herein.
3. Defendant-employer is an approved self-insured.
4. Plaintiff's average weekly wages were $1,456.98 per week, yielding a compensation rate of $786.00 per week.
5. The following exhibits were admitted into evidence at the hearing before the Deputy Commissioner:
 a. Stipulation #1, plaintiff's medical records, Industrial Commission forms and employment records, pages 1-96;
 b. Plaintiff's #1, plaintiff's 2006/2007 annual performance evaluation;
 c. Plaintiff's #2, e-mail from plaintiff to plaintiff's attorney;
 d. Plaintiff's #3, defendant's response to plaintiff's second set of interrogatories and request for production of documents;
 e. Plaintiff's #4, e-mail of July 25, 2008 from Janet Mikos to plaintiff;
 f. Plaintiff's #5, letter of June 4, 2008 from Ms. Mikos to plaintiff;
 g. Plaintiff's #6, e-mail between Renee Carpenter and plaintiff dated April 13, 2008;
 h. Defendant's #1, 1997 report of injury by plaintiff; *Page 3 
 i. Defendant's #2, short term disability payments to plaintiff.
6. The issues before the Commission are as follows:
 a. Whether plaintiff sustained an injury by accident while in the course and scope of her employment with defendant-employer on either February 26, 2008, March 7, 2008, March 10, 2008, and/or May 20, 2008;
 b. If so, to what, if any, workers' compensation benefits is plaintiff entitled under the North Carolina Workers' Compensation Act;
 c. Whether plaintiff is entitled to attorney's fees;
 d. Did defendant unreasonably deny plaintiff's claim(s);
 e. Whether defendant is entitled to any credit for short and long term disability payments made to plaintiff.
 ***********
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. As of the hearing before the Deputy Commissioner, plaintiff was 47 years old and had worked over 20 years as a registered nurse for defendant-employer. As of February 26, 2008 plaintiff was earning an average weekly wage of $1,456.98, which yields the maximum compensation rate of $786.00.
2. On February 26, 2008, plaintiff was assigned to work in the women's operating room, which was her regularly assigned position. In the early afternoon, when the surgical cases for the day had been completed, plaintiff was asked to assist in post surgical recovery and transport for which she had some previous experience. She transported a post surgical patient to a hospital room. At approximately 2:00 p.m., while assisting transferring the patient from the *Page 4 
gurney into the bed, plaintiff leaned across the bed and reached out her hand to assist the patient and felt a pain in her back. Plaintiff finished the patient transfer and returned downstairs to the women's operating room area to complete the rest of her shift.
3. During the remaining hour of her shift, plaintiff's back pain became more severe. While driving home, her pain further increased and by the time she arrived at home she had to lie on the floor to get relief from muscle spasms. Due to her severe back pain and spasm, plaintiff was not able to enjoy her birthday dinner with her family. She took some muscle relaxers to help relieve her symptoms and rested.
4. On February 27, 2008, immediately upon arriving for her shift at 7:00 a.m., plaintiff reported the back injury of the previous day to her supervisor, Beverly Caraway. Ms. Caraway, who testified and confirmed plaintiff's report of injury, instructed plaintiff to complete an injury report on RiskMaster, defendant-employer's computerized system, and then go to Staff Health for evaluation.
5. Plaintiff then completed the computerized incident report in which she reported the claim as a workplace injury. She noted that the cause of her injury was moving a patient, reporting that her pain became worse during the last hour of her shift. Defendant-employer's risk management staff then reported that the claim fell under the "Workers Comp SIR" insurance policy and listed the type of claim as "Medical Only." The staff further reported that plaintiff was not performing her regular job, reported her disability to be from an injury, and noted the injury was to her low back.
6. Plaintiff was seen by physician's assistant Josh Klaaren at defendant-employer's Staff Health. This visit was scheduled by defendant as a workers' compensation evaluation. Upon examination, Mr. Klaaren noted plaintiff had spasms and low back pain and "bilateral SI joint area pain." *Page 5 
In her hand written report of injury, plaintiff noted "sudden onset of low back pain during last hour of my shift." Mr. Klaaren's note from this visit noted that plaintiff had experienced back pain "without clear inciting event," but at his deposition on May 13, 2009, Mr. Klaaren confirmed that plaintiff told him about an incident lifting a patient. Mr. Klaaren diagnosed plaintiff with a low back and SI joint strain, prescribed some anti-inflammatory medications, and restricted plaintiff to light duty work for two days.
7. After her Staff Health evaluation, plaintiff returned to the operating room and again reported to Ms. Caraway. Ms. Caraway in turn advised her supervisors, Samantha Farmer and Renee Carpenter, of plaintiff's injury and limited work status. Ms. Farmer confirmed at the hearing before the Deputy Commissioner that Ms. Caraway advised her of plaintiff's report of injury shortly after the incident occurred, as well as plaintiff's work restrictions.
8. Thereafter, plaintiff continued to work on restricted duty until March 7, 2008. On March 7, 2008, plaintiff was required to hold a large panniculus, or abdominal apron, of a 300-pound patient for approximately 20-30 minutes while a spinal block was administered. During this task, plaintiff experienced an increase of her low back pain, muscle spasms, and onset of right SI joint pain. Plaintiff continued working and on March 10, 2008, she was attempting to remove the base from an operating room table during a procedure when she once again experienced the onset of low back and SI joint pain and spasms. On this date plaintiff reported the incident and was instructed to go to Staff Health to be examined.
9. As instructed, plaintiff reported to Staff Health on March 10, 2008 and was seen by Mr. Klaaren. This visit was scheduled and reported by defendant as a follow-up workers' compensation evaluation for plaintiff's February 26, 2008, injury. While at the evaluation, plaintiff reported both March 7th and March 10th incidents and she noted low back pain with SI *Page 6 
joint pain, also noting some secondary spasms. Mr. Klaaren believed that plaintiff's condition was considered by defendant to be related to her workers' compensation injury of February 26, 2008, and he advised plaintiff not to work for two days.
10. Plaintiff continued to work on light duty, but experienced intermittent low back and bilateral SI joint pain and spasms. On March 10, 2008, she consulted Dr. Resa Johnson for chiropractic care at the suggestion of a co-worker, and reported to Dr. Johnson that she was injured on February 26, 2008, while pulling a 350-pound patient and developed severe back pain 30 minutes later. Dr. Johnson diagnosed plaintiff with right SI pain, lumbar pain and cervical strain.
11. On March 13, 2008, plaintiff e-mailed Renee Carpenter, defendant-employer's operating room director, to advise her that due to the very strenuous work required in the women's operating room, plaintiff had re-aggravated her back injury two weeks ago on March 7 and March 10, 2008, and that the re-injuries had worsened her condition.
12. On April 11, 2008, plaintiff was seen by Dr. Paul Martin of Staff Health for continued right SI joint pain. Plaintiff informed Dr. Martin that she was still working, but by afternoon was experiencing increasing back pain and spasms. Dr. Martin noted that plaintiff's date of injury was February 26, 2008 and that her injury was work related. Plaintiff was given an injection by Dr. Martin. Dr. Martin sent a follow up e-mail to Ms. Carpenter the same day, again advising her of plaintiff's continuing SI joint pain since February 26, 2008.
13. On May 20, 2008, plaintiff again injured her back while attempting to move a Bookwalter ring weighing approximately 50 pounds. She reported this incident to her supervisor and was again directed to go to Staff Health, where she was seen on May 22, 2008, by physician's assistant Anne Marie Hawes. Plaintiff reported pain over her sacrum with muscle *Page 7 
spasms in her low back. The records from defendant report this visit was scheduled and reported as a follow-up visit for plaintiff's February 26, 2008, injury. Ms. Hawes noted that plaintiff experienced discomfort over the bilateral sacral area and she placed plaintiff on restricted duty. Ms. Hawes recommended that plaintiff have assistance moving patients, and further recommended that plaintiff be seen by Dr. Daniel Hankley, a specialist in physical medicine, rehabilitation and pain management at Blue Ridge Bone and Joint Clinic. Ms. Hawes recommended to Mary Silver, the workers' compensation administrator for defendant-employer, that plaintiff be authorized to see Dr. Hankley.
14. On or about May 27, 2008, Janet Mikos, defendant's adjuster, became aware of plaintiff's claim and interviewed plaintiff about her February 26, 2008, incident. Ms. Mikos had been working for defendant for approximately one month. Ms. Mikos did not record the conversation with plaintiff, but entered a summary of her notes of the conversation into defendant's claims management system, Risk Master, on May 27, 2008. Ms. Mikos had access to plaintiff's initial February 27, 2008, Risk Master report in which plaintiff reported the cause of her injury was moving a patient and in an separate section noted her pain became more severe in the last hour of her shift. Ms. Mikos was further aware this claim had been timely and properly reported and entered into the Risk Master system as a "medical only" workers' compensation claim.
15. During their conversation on May 27, 2008, plaintiff explained to Ms. Mikos that she had been asked to assist in transferring a post-surgical patient to an upstairs room, which was not her regular job. Plaintiff reached out across a bed and let the patient grab her arm to assist the 300-pound patient transfer into a bed, at which time she felt pain in her low back. Plaintiff also told Ms. Mikos that she returned downstairs to her normal work station, sat at a desk during *Page 8 
the last hour of her shift, and had increasing back pain until she left for home. Plaintiff also informed Ms. Mikos that during her ride home, her pain became much more severe and upon getting home she had to miss her birthday dinner due to her pain.
16. Ms. Mikos advised plaintiff that since neither she nor the patient she was assisting slipped, tripped or fell, such incident did not qualify for workers' compensation coverage. This statement is confirmed by Ms. Mikos's Risk Master entry which reported "there is no specific traumatic event, no fall, no trip, no stumbling or either the clmt [claimant] or any patient that she may have been assisting."
17. By letter to plaintiff dated June 4, 2008, defendant denied plaintiff's claim based on that portion of the Risk Master report which reported plaintiff's lower back started hurting during the last hour of her shift; Ms. Mikos' mistaken opinion that because plaintiff did not report a trip or fall, no injury by accident occurred; and because the initial Staff Health report stated that plaintiff experienced no clear inciting event. Defendant reached the decision to deny the claim without consulting or interviewing plaintiff's supervisor Ms. Caraway, who left defendant's employment in June 2008. Defendant acknowledged on their Form 19 that Ms. Caraway first knew of plaintiff's injury on February 27, 2008.
18. On May 30, 2008, plaintiff was seen by Dr. Daniel Hankley of Blue Ridge Bone and Joint Clinic at the referral of defendant's Staff Health. Plaintiff reported her injury assisting a patient, followed by severe low back pain and SI joint pain 30 minutes later, as well as her re-aggravation a week later. On examination Dr. Hankley noted tenderness to palpation over her right PSIS, worse with lumbar extension. He further reviewed x-rays from May 20, 2008, which showed Grade I spondylolisthesis at L5 on S1. Dr. Hankley stated that plaintiff aggravated her SI joint during her two lifting and patient assisting movements which "continues to aggravate it *Page 9 
while she is doing full duty." He indicated plaintiff might have some referred pain from her L5-S1 disc and recommended obtaining an MRI scan and steroid injections. Dr. Hankley placed plaintiff on 20-pound lifting restrictions with limited bending, stooping or twisting.
19. Although denying plaintiff's workers' compensation claim, defendant provided light duty work for plaintiff pursuant to their workers' compensation policy. She continued to work in the operating room and continued to have low back and bilateral SI joint pain.
20. Plaintiff returned to Dr. Hankley on June 12, 2008, when he reported she had been working under restricted duty and her pain was getting worse, specifically noting more low back pain and right SI joint pain. He further noted plaintiff reported significant back pain and spasms after simply lifting a casserole out of the oven and that her spasms were so severe that she had to lie on the floor. These were the very same complaints plaintiff made to Staff Health on February 27, 2008. Dr. Hankley's diagnosis did not change and he reported her SI joint pain could be referred from her low back and spondylolisthesis. Dr. Hankley recommended an MRI scan and left plaintiff's restrictions unchanged.
21. On or about June 13, 2008, plaintiff was sent home from work by defendant and advised light duty work was no longer available. On Monday, June 16, 2008, plaintiff was summoned to a meeting with Samantha Farmer at defendant's human resources department, at which time plaintiff was informed that defendant-employer had reconsidered her restrictions and determined that light duty work would be made available to plaintiff. Thereafter, plaintiff continued to work in the women's operating room and continued to experience low back and bilateral SI joint pain.
22. On June 24, 2008, plaintiff returned to Dr. Johnson for additional chiropractic treatment, at which time she reported worsening pain over the past few days with a "fiery pain *Page 10 
over her rt. SI joint." There is no indication that plaintiff sustained any new injury or intervening incident.
23. On June 26, 2008, plaintiff returned to Dr. Hankley with continued complaints of severe low back pain and bilateral lower extremity pain, left worse than right. Dr. Hankley reviewed the MRI scan and diagnosed bilateral pars defect with Grade I spondylolisthesis and severe left and mild right neuroforaminal encroachment, which confirmed her earlier x-rays of May 20, 2008. No disc herniation or other cause for her leg pain was noted. Dr. Hankley continued work restrictions and recommend an epidural injection. Dr. Hankley did not indicate that plaintiff had sustained any new injury or intervening incident.
24. On July 16, 2008, plaintiff was evaluated by Dr. Ralph Loomis, a board certified neurosurgeon, at which time she again reported the onset of her symptoms in February when "she was assisting a patient move from a gurney to bedside post surgically and felt a little twinge in her back . . . about 30 minutes later her low back began hurting" which got progressively worse over the next few hours. It was noted her pain never resolved and at the end of June she began to notice trouble with her left thigh. On exam Dr. Loomis reported diffuse weakness in her left leg and, after review of her MRI, diagnosed spondylolisthesis at L5-S1, lumbar stenosis and foraminal stenosis, low back pain, left leg weakness and radiculopathy. A nerve root block was recommended which was done on August 14, 2008, and which provided significant relief of her symptoms.
25. Throughout the summer of 2008, plaintiff continued to work on light duty in the women's operating room. She was seen in follow up by Dr. Loomis on September 16, 2008, with continued complaints of low back pain. On exam she was noted to have normal reflexes and *Page 11 
gait and negative straight leg raise. Her diagnosis remained unchanged but she was referred for urological exam.
26. On September 9, 2008, defendant notified plaintiff that light duty work was no longer being made available to her and she was taken out of work as of that date.
27. Plaintiff was next evaluated for a second opinion by Dr. Jon Silver, who was Dr. Loomis' partner, on October 22, 2008, at which time she was noted on exam to have mild tenderness to palpation in the lower lumbar region with moderate left sciatic notch tenderness. She again had normal reflexes and negative straight leg raises. Based on his examination, Dr. Silver noted that the lifting injury aggravated the spondylolisthesis in that plaintiff already had some nerve root compression and this lifting injury irritated the root. Plaintiff was thereafter referred to Dr. Margaret Burke, a specialist in physical medicine and rehabilitation, to undergo rehabilitation to try to avoid a surgical fusion.
28. In a letter dated October 23, 2008, Dr. Loomis agreed with Dr. Silver's opinion that plaintiff's lifting injury aggravated her spondylolisthesis and that she was incapable of performing her duties as a nurse for defendant.
29. Plaintiff ultimately underwent a lumbar interbody fusion at L5-S1 on December 1, 2008 with Dr. Loomis. On December 3, 2008, two days after her surgery and when her FMLA expired, defendant terminated plaintiff's employment. Plaintiff then re-applied for other positions with defendant-employer and was offered an alternative position, but this offer was rescinded a few days later.
30. Post surgically, plaintiff continued under the care of Dr. Loomis and Dr. Burke. She participated in extensive physical therapy. During his deposition Dr. Loomis believed that it was too early to assign an impairment rating and indicated he would need to see plaintiff again *Page 12 
before making that determination. Dr. Burke stated that it would be months before plaintiff would be released at maximum medical improvement and that she probably had a 25% impairment rating. Both doctors indicated that before they could establish functional work limitations, a functional capacity evaluation would need to be performed.
31. Both Dr. Burke and Dr. Loomis are of the opinion, and the Full Commission finds, that plaintiff's back complaints beginning in February, 2008, were a direct result of her lifting incident on February 26, 2008, and her condition was further aggravated by her incidents of March 7, March 10, and May 20, 2008, all of which necessitated her surgery and resulted in her disability.
32. Mr. Klaaren, defendants' own Staff Health physician's assistant, indicated that plaintiff's complaints remained consistent and in his opinion her low back and SI complaints were the same complaints caused by her initial injury of February 26, 2008, and were treated as such during all evaluations by Staff Health personnel.
33. Dr. Hankley agreed that plaintiff's low back and bilateral SI joint pain and symptoms were referred from the aggravation of her spondylolisthesis. However, Dr. Hankley testified that such complaints somehow resolved without explanation. He believed that plaintiff's complaints of left legs symptoms were a result of picking up a casserole in late June 2008 and therefore her subsequent symptoms were unrelated to her injury. However, Dr. Hankley admitted that in reaching such opinion, he was not aware of plaintiff's post-injury consistent bilateral SI joint pain and could not reach an opinion about the significance of such complaints.
34. Greater weight is afforded to the opinions of Dr. Burke, Dr. Silver and most specifically Dr. Loomis than to Dr. Hankley. Dr. Loomis actually performed plaintiff's surgery *Page 13 
and was given the complete history of plaintiff's complaints from February 26, 2008 until his surgical recommendation.
35. Plaintiff's doctors indicated that she continues to require follow-up treatment and a functional capacity evaluation to determine her safe working limitations. Plaintiff has been and continues to be disabled from any employment.
36. Defendant partially funded the short-term disability plan and fully funded the long-term disability plan through which plaintiff received benefits.
37. This matter was appealed to the Full Commission by defendant from an Opinion and Award awarding benefits and results in an affirmation of that award.
38. Defendant did not deny and defend this action without reasonable grounds.
 ***********
Based upon the stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a specific traumatic incident of the work assigned on February 26, 2008, which was aggravated by incidents on March 7, March 10 and May 20, 2008, arising out of and in the course of her employment with defendant-employer. As a direct result of her injury by accident, plaintiff injured her low back. N.C. Gen. Stat. § 97-2(6).
2. As a result of the February 26, 2008, injury by accident, plaintiff was disabled from any employment and is entitled to have defendant pay ongoing temporary total disability compensation at a rate of $786.00 per week for the period of September 10, 2008, and continuing until further Order of the Commission. N.C. Gen. Stat. § 97-29. Defendant is entitled to a partial *Page 14 
credit for short-term disability compensation and full credit for any long-term disability compensation paid to plaintiff. N.C. Gen. Stat. § 97-42.
3. As a result of the February 26, 2008, incident and resulting physical injuries, plaintiff is entitled to have defendant pay for all related medical treatment that is reasonably necessary to effect a cure, give relief, or lessen plaintiff's disability, including expenses associated with treatment provided by Dr. Margaret Burke and Dr. Ralph Loomis, or such treatment or referrals as they deem appropriate. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
4. Plaintiff is entitled to payment by defendant for the attorney's fees associated with this appeal to the Full Commission pursuant to N.C. Gen Stat. § 97-88.
5. The defense of this claim was reasonable and not stubborn, unfounded litigiousness, and, therefore, plaintiff is not entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1.Sparks v. Mountain Breeze Restaurant,55 N.C. App. 663, 286 S.E.2d 575 (1982).
 ***********
Based on the foregoing findings of facts and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fees approved below, defendant shall pay to plaintiff total disability compensation at the rate of $786.00 per week beginning September 10, 2008 and continuing until such time as plaintiff returns to work or until further Order by the Commission. The compensation is subject to a partial credit for short-term disability compensation and full credit for any long-term disability compensation paid to plaintiff.
2. Defendant shall pay all medical expenses incurred or to be incurred by plaintiff as a result of the compensable injury for so long as such evaluations, treatments and examinations *Page 15 
may reasonably be required to effect a cure, give relief and/or lessen plaintiff's period of disability, including but not limited to the expenses associated with treatment from Dr. Burke and Dr. Loomis.
3. A reasonable attorney's fee in the amount of 25% of the compensation approved and awarded to plaintiff is approved for plaintiff's counsel and shall be deducted from plaintiff's compensation and be paid directly to plaintiff's attorney.
4. Plaintiff's counsel is hereby awarded attorney's fees associated with this appeal to the Full Commission, pursuant to N.C. Gen. Stat. § 97-88. Plaintiff's counsel shall submit to the Full Commission an affidavit or itemized statement setting forth the time spent preparing for, attending, and arguing this appeal to the Full Commission. Upon receipt of this affidavit, the Full Commission shall issue an Order directing defendant to pay an additional attorney's fee directly to plaintiff's counsel.
5. Defendant shall pay the costs of this action.
This 15th day of March, 2010.
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_____________ CHRISTOPHER SCOTT COMMISSIONER
 S/_____________ DIANNE C. SELLERS COMMISSIONER *Page 1